UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:13CV-00052-HBB

TOSHA M. MUDD                                                                   PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                        DEFENDANT

**MEMORANDUM OPINION
AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Tosha M. Mudd ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 11) and Defendant (DN 14) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13). By Order entered July 15, 2013 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments on June 18, 2010[1] (Tr. 252, 330-336, 337-342). Plaintiff alleged that she became disabled on May 16, 2008, as a result of fibromyalgia (Tr. 359). Administrative Law Judge MaryJoan McNamara ("ALJ") conducted a video hearing on September 15, 2011 (Tr. 199, 216). The ALJ presided over the video hearing from Baltimore, Maryland, and Plaintiff appeared in Bowling Green, Kentucky, with her attorney, Gary S. Logsdon (Tr. 199). Leonard Francois, an impartial vocational expert, testified by telephone during the hearing (Tr. 199, 216).

In a decision dated October 20, 2011, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 199-209). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 16, 2008, the alleged onset date (Tr. 201). At the second step, the ALJ determined that Plaintiff's fibromyalgia, osteoporosis, and osteopenia are "severe" impairments within the meaning of the regulations (Tr. 201). Notably, at the second step, the ALJ also determined that Plaintiff's alleged impairments of major depressive disorder (single episode), anxiety, short term memory loss, transient ischemic attack, gastroenteritis, and scoliosis (both singly and in combination) are "non-severe" impairments within the meaning of the regulations (Tr. 202). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 203).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of light work (Tr. 204). The ALJ explained that Plaintiff is not able to perform a

---

[1]Protective filing date of May 11, 2010 (Tr. 252-255).

full range of light work because she would need a sit/stand, at-will work option; she should avoid all ladders, ropes, and scaffolds; she should also avoid unprotected heights as well as fumes, odor, dust, and poorly ventilated spaces; she has the ability to understand and carry out simple routine tasks; she is able to attend and concentrate as necessary to sustain a workday; she is able to interact appropriately with others; and she should probably be in a low stress work environment (Tr. 204). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is capable of performing her past relevant work as an accounting clerk and office manager (Tr. 207).

Notably, despite finding Plaintiff is capable of performing her past relevant work, the ALJ made alternative findings for step five of the sequential evaluation process (Tr. 208). After considering the vocational expert's testimony as well as Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded there are other jobs in significant numbers in the national economy that Plaintiff can perform (Tr. 208). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from May 16, 2008 through the date of the decision (Tr. 209).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 15-17). The Appeals Council considered Plaintiff's arguments and additional evidence but denied her request for review of the ALJ's decision (Tr. 1-6).

## CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term

"disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step and made alternative findings at the fifth step.

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serverices, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Services, 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff disputes Finding No. 3 because the ALJ failed to determine her mental impairments are "severe" within the meaning of the regulations (DN 11, Fact and Law Summary at Pages 2-3). Plaintiff argues the opinions of consultative examiner Craig Cabezas, Ph.D., non-examining State agency psychologist Ilze Sillers, Ph.D., and treating source Dr. Skaggs demonstrate the existence of mental impairments that impact work functioning (DN 11, Fact and Law Summary at Pages 2-3).

5

The undersigned finds it unnecessary to decide this argument. According to the regulations, upon determining that a claimant has one severe impairment, the ALJ must continue with the remaining steps in the disability evaluation outlined above. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c). Here, the ALJ found that Plaintiff suffered from the severe impairments of fibromyalgia, osteoporosis, and osteopenia. Accordingly, the ALJ continued with the remaining steps in the disability determination. Because the ALJ could and did consider the limitations imposed by Plaintiff's mental impairments in determining whether she retained sufficient residual functional capacity to allow her to return to her past relevant work and to other jobs in the national economy (Tr. 204, 206, 207, 208), the ALJ's failure to find that Plaintiff's mental impairments are "severe" within the meaning of the regulations could not constitute reversible error. Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987).

Next, Plaintiff disputes Finding No. 5 because she believes the residual functional capacity determination is not supported by substantial evidence in the record (DN 11, Fact and Law Summary at Pages 4-8). More specifically, Plaintiff argues the ALJ failed to give appropriate consideration and weight to the opinion of her treating physician, Dr. Skaggs; to properly consider the assessment of consultative psychological examiner Craig Cabezas, Ph.D.; to adequately assess Plaintiff's credibility; and to consider the need for an assistive device (cane) (DN 11, Fact and Law Summary at Pages 4-8).

Defendant contends that Finding No. 5 is supported by substantial evidence in the record (DN 14, Fact and Law Summary at Pages 7-13). Defendant asserts that the ALJ gave appropriate weight to Dr. Skaggs' opinion; properly considered Dr. Cabezas' opinion; appropriately considered

Plaintiff's credibility; and implicitly considered Plaintiff's need for a cane (DN 14, Fact and Law Summary at Pages 7-13).

Finding No. 5 sets forth the ALJ's residual functional capacity determination (Tr. 204). The residual functional capacity finding is an Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

The Court will first address Plaintiff's argument that the ALJ failed to give appropriate consideration and weight to the opinion of her treating physician, Dr. Skaggs. Notably, the process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 404.1527(c)[2]; Gayheart v. Commissioner, 710 F.3d 365, 376 (6th Cir. 2013). Under the "treating physician rule," controlling weight is assigned to the medical opinion of a treating source when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

---

[2]Effective March 26, 2012, the numbering of the treating physician rule changed from section 416.927(d)(2) to section 416.927(c)(2), and section 404.1527(d)(2) became section 404.1527(c)(2).

7

substantial evidence in ...[the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Social Security Ruling 96-2p; Gayheart, 710 F.3d at 376; Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir. 1993); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 857 (6th Cir. 1990).

The ALJ determined that Dr. Skaggs' opinion, dated September 9, 2011, was not entitled to controlling weight because the physical and mental limitations expressed in the opinion were not well supported by the results of medically acceptable clinical and laboratory diagnostic techniques in the doctor's own records (Tr. 206-207, 1019-1022). Additionally, the ALJ found Dr. Skaggs' opinion was not consistent with other substantial evidence in the case record, including Plaintiff's own testimony regarding her physical and mental abilities (Tr. 206-207). Each of these findings are supported by substantial evidence in the record and comport with the applicable law regarding the question of whether to assign controlling weight to the medical opinion of a treating source. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Social Security Ruling 96-2p; Gayheart, 710 F.3d at 376; Bogle, 998 F.2d at 347-348; Crouch, 909 F.2d at 857. Thus, there is no merit to the first part of Plaintiff's argument.

In the second part of her argument, Plaintiff contends the ALJ failed to give good reasons for rejecting Dr. Skaggs' opinions (DN 11, Fact and Law Summary at Pages 5-7). Additionally, Plaintiff asserts the reasons provided by the ALJ are not supported by substantial evidence in the record (DN 11, Fact and Law Summary at Pages 5-7).

If the medical opinion of a treating source is found not to be entitled to controlling weight, "then the opinion is weighed based on the length, frequency, nature, and extent of the treating relationship, ... as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. Gayheart, 710 F.3d

at 376 (citing 20 C.F.R. § 404. 1527(c)(2)-(6)). Further, the Administrative Law Judge must provide "good reasons" for the weight given to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p; Gayheart, 710 F.3d at 376; Wilson v. Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004) (if an Administrative Law Judge discounts the opinion of a treating physician, the Administrative Law Judge must provide "good reasons" for doing so). Notably, "[t]hese reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Gayheart, 710 F.3d at 376 (citing Social Security Ruling 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" Gayheart, 710 F.3d at 376 (quoting Wilson, 378 F.3d 544).

Here, the ALJ found Dr. Skaggs' medical opinion was not entitled to great weight after considering his area of specialty, the length of the treating relationship, the nature of the treating relationship, the extent of the treating relationship, and the degree to which Dr. Skaggs' opinion was consistent with the record as a whole and supported by relevant evidence (Tr. 206). Gayheart, 710 F.3d at 376 (citing 20 C.F.R. § 404. 1527(c)(2)-(6)). Plaintiff takes issue with the ALJ's comment that Dr. Skaggs had "little authority to evaluate the claimant mentally, as he was not treating her for her mental impairments" (Tr. 206). Plaintiff contends substantial evidence does not support such a finding because the treatment notes show Dr. Skaggs did treat her mental conditions by identifying them and by prescribing medications such as Clonazepan, Trazodone, and Effexor (DN 11, Fact and Law Summary at Page 6).

9

The record shows that Dr. Skaggs is a general practitioner who primarily treated Plaintiff's physical impairments during the time frame September 16, 2010 through September 7, 2011 (Tr. 984-1008). Dr. Skaggs did conduct a general psychiatric assessment on September 16, 2010 and November 29, 2010 (Tr. 1002, 1007, 1008) and he did prescribe medications to address depression and anxiety (Tr. 984-1008). After considering this evidence and the ALJ's assessment, the Court concludes Plaintiff's argument is premised on a misinterpretation of the ALJ's comment. Essentially, the comment indicates the ALJ discounted the mental restrictions expressed by Dr. Skaggs because he was not a mental health professional treating Plaintiff for her mental impairments (Tr. 206). Thus, the ALJ discounted the mental limitations after considering Dr. Skaggs' area of specialty along with the nature and extent of the treating relationship. 20 C.F.R. §§ 404.1527(c)(2)(ii) and (c)(5), 416.927(c)(2)(ii) and (c)(5). In sum, the ALJ's finding is supported by substantial evidence in the record and comports with applicable law.

Another reason the ALJ gave for discounting Dr. Skaggs' opinion was a treating history "of barely three (3) months" (Tr. 206). Plaintiff argues substantial evidence does not support this finding (DN 11, Fact and Law Summary at Page 6). Defendant concedes this finding is incorrect because at the time Dr. Skaggs rendered his opinion he had treated Plaintiff on and off for approximately a year (DN 14, Fact and Law Summary at Page 10). Notably, after excising this reason, the Court concludes the ALJ provided other good reasons for according "some weight" to Dr. Skaggs' opinion. Therefore, the error was harmless. In sum, there is no merit to Plaintiff's claim that the ALJ failed to give appropriate consideration and weight to the opinion of her treating physician, Dr. Skaggs.

Next, Plaintiff claims the ALJ failed to properly consider the report and assessment of consultative psychological examiner Craig Cabezas, Ph.D. (DN 11, Fact and Law Summary at Page 7). Plaintiff acknowledges that the ALJ gave great weight to Dr. Cabezas' opinion that she is capable of performing simple routine tasks (DN 11, Fact and Law Summary at Page 7). Plaintiff argues the ALJ failed to address Dr. Cabezas' opinions that support her allegations of disability (DN 11, Fact and Law Summary at Page 7). Specifically, Plaintiff refers to the diagnosis of a pain disorder (based on psychological factors and a general medical condition) and restrictions such as a limited ability to complete tasks consistently and a hindered ability to sustain attention for lengthy periods (DN 11, Fact and Law Summary at Page 7).

Defendant argues there is no merit to Plaintiff's claim because the ALJ considered Dr. Cabezas' opinion and gave it great weight (DN 14, Fact and Law Summary at Page 10). Defendant explains that Dr. Cabezas offered general limitations, as opposed to specific functional limitations, with regard to Plaintiff's ability to complete tasks consistently and the ability to sustain attention for lengthy periods (DN 14, Fact and Law Summary at Page 10). Defendant points out that Ilze Sillers, Ph.D., a non-examining state agency psychologist, gave Dr. Cabezas' opinion great weight, and based on the total evidence in the record, came up with specific functional limitations based on Dr. Cabezas' more general opinion (DN 14, Fact and Law Summary at Page 10). Defendant also points out that the ALJ gave both opinions great weight and incorporated both into her residual functional capacity finding (DN 14, Fact and Law Summary at Page 10).

The Court agrees with Defendant's position on this issue. In pertinent part Dr. Cabezas' opinion reads as follows:

> The claimant's ability to understand instructions in work circumstances would likely be adequate, but her ability to complete

> task [sic] consistently would likely be limited due to a combination of medical and psychiatric factors. Her ability to sustain attention for lengthy periods would be hindered by her depression, worries, and concerns and chronic pain. Her ability to work with others in public settings would likely be adequate. ...

(Tr. 906). Thus, Dr. Cabezas provided general, as opposed to specific, functional limitations.

By contrast, after reviewing the record and giving great weight to Dr. Cabezas' opinions, Dr. Sillers offered specific functional limitations (Tr. 923-925). For example, Dr. Sillers opined that Plaintiff's ability to understand and remember detailed instructions was moderately limited; her ability to carry out detailed instructions was moderately limited; and her ability to maintain attention and concentration for extended periods was moderately limited (Tr. 923). Additionally, Dr. Sillers concluded Plaintiff would be able to:

> A) Understand, remember and carry out simple one and two step instructions;
> B) Sustain attention for extended periods of two hour segments for simple tasks;
> C) Tolerate coworkers, supervisors [sic]
> D) Adapt to changes as needed within the above parameters[.]

(Tr. 925).

The ALJ announced he was giving great weight to the psychological assessment completed by Dr. Cabezas and the assessments completed by Dr. Siller (Tr. 206). Further, the ALJ incorporated both opinions into her residual functional capacity finding (Tr. 206). Thus, contrary to Plaintiff's assertion, the ALJ did address the entirety of Dr. Cabezas' opinions.

Next, Plaintiff claims the ALJ failed to adequately assess her credibility and the need for use of a cane when assessing her residual functional capacity (DN 11, Fact and Law Summary at Page 8). More specifically, Plaintiff asserts the ALJ failed to recognize Dr. Skaggs' diagnosis of a pain disorder associated with psychological factors and a general medical condition (DN 11, Fact and

12

Law Summary at Page 8). Plaintiff argues the mental disorder's impact on her pain must be considered when assessing the credibility of her allegations of pain and the existence of conditions that could reasonably be expected to give rise to the pain alleged (DN 11, Fact and Law Summary at Page 8). Plaintiff also argues the ALJ should have addressed whether the use of a cane was necessary because Dr. Skaggs prescribed a walker but she graduated to a cane (DN 11, Fact and Law Summary at Page 8).

Defendant contends the ALJ explicitly considered all of Plaintiff's subjective complaints of mental and physical symptoms and found that her statements concerning the impact of her symptoms on her ability to work were not entirely credible (DN 14, Fact and Law Summary at Pages 11-; citing Tr. 204-207). Defendant acknowledges Dr. Skaggs' opined that Plaintiff needed a cane (DN 14, Fact and Law Summary at Page 12). However, Defendant points out that observations set forth in Dr. Skaggs' own treatment notes were inconsistent with this opinion (DN 14, Fact and Law Summary at Page 12). Defendant argues the ALJ implicitly considered the cane requirement but discounted it when she assigned some, as opposed to great, weight to Dr. Skaggs' opinion (DN 14, Fact and Law Summary at Pages 12-13).

In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p. Notably, a claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether a claimant suffers from debilitating pain and/or

13

other symptoms, the two-part test set forth in Duncan v. Secretary of Health and Human Serv's., 801 F.2d 847, 853 (6th Cir. 1986), applies. First, the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id. When the reported pain and/or symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

There is no merit to Plaintiff's claims that the ALJ failed to recognize Dr. Skaggs' diagnosis of a pain disorder associated with psychological factors and a general medical condition, or Plaintiff's need for a walker or cane. As previously discussed, the ALJ only accorded some weight to Dr. Skaggs' opinions (Tr. 206). By contrast, the ALJ accorded great weight to the assessments of Drs. Cabezas and Siller (Tr. 206). Thus, the ALJ looked to Drs. Cabezas and Siller, instead of Dr. Skaggs, for guidance on the impact of the combination of medical and psychiatric factors (Tr. 204-207, 906, 923-925). Additionally, the ALJ considered all of the evidence in the record in assessing the purported level of pain and limitation imposed by Plaintiff's physical impairments (Tr. 204-207). The ALJ found the objectively established medical conditions were not of such severity that they could reasonably be expected to produce the alleged disabling pain and other symptoms (Tr. 204-207). Therefore, the ALJ appropriately considered other information and factors that may be relevant to the degree of pain and other symptoms alleged (Tr. 204-207).

For example, the ALJ considered Plaintiff's level of daily activity as a factor in determining the degree to which the pain and other symptoms impact her ability to work (Tr. 204-207). 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Secretary of Health and Human Serv's., 927 F.2d 228, 231 (6th Cir. 1990). The ALJ also considered whether there were any inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's statements and the rest of the evidence (Tr. 204-207). 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain and other symptoms to the extent she testified (Tr. 205). In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's credibility. Because tolerance of pain is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the ALJ, who has the opportunity to observe Plaintiff's demeanor, "should not be discharged lightly." Houston v. Secretary of Health and Human Serv's., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Secretary of Health, Educ. and Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that the ALJ's findings regarding Plaintiff's credibility are supported by substantial evidence and fully comport with applicable law, including the regulations for evaluating consultative and treating physician's opinions and pain. Additionally, in making the credibility findings, the ALJ did consider the combined effect of the medical and psychiatric factors. Further, the ALJ implicitly considered and discounted the walker/cane requirement when the ALJ assigned only some weight to Dr. Skaggs' opinion. In sum, there is no merit to Plaintiff's claims that the credibility assessment was inadequate and the ALJ failed to

consider her need for an assistive device in the residual functional capacity findings.

Plaintiff disputes Finding No. 6 because she believes the vocational expert's testimony at the fourth step is inconsistent with the Dictionary of Occupational Titles ("DOT") (DN 11, Fact and Law Summary at Pages 8-9). Plaintiff points out, the Vocational expert testified that the DOT classified her past job as an accounting clerk as skilled with an SVP of 5 and her past job of office manager as skilled with an SVP of 7 (DN 11, Fact and Law Summary at Page 9; Tr. 245). Plaintiff also points out, the vocational expert testified she could perform both of these jobs with the residual functional capacity in Finding No. 5 (DN 11, Fact and Law Summary at Page 9; Tr. 246-247). Plaintiff asserts the ALJ failed to seek clarification from the vocational expert as to how skilled work was consistent with the residual functional capacity's limitation to simple routine tasks and a low stress work environment (DN 11, Fact and Law Summary at Page 9). Plaintiff argues clarification in response to the apparent conflict is required under Social Security Ruling 00-4p (DN 11, Fact and Law Summary at Page 9).

Plaintiff acknowledges the vocational expert did identify other jobs that could be performed by someone with the residual functional capacity in Finding No. 5 (DN 11, Fact and Law Summary at Page 9). Plaintiff argues the vocational expert's testimony about those other jobs does not constitute substantial evidence because it is based on a flawed residual functional capacity finding (DN 11, Fact and Law Summary at Page 9). Plaintiff believes the residual functional capacity finding is flawed for the reasons set forth above (DN 11, Fact and Law Summary at Page 9). Therefore, Plaintiff claims the vocational expert's testimony does not constitute substantial evidence to support the ALJ's findings at the fourth and fifth steps in the sequential evaluation process (DN 11, Fact and Law Summary at page 9).

16

Defendant suggests that if there was an error at the fourth step, the vocational expert's testimony at the fifth step indicated Plaintiff can perform other work that exists in significant numbers in the national economy (DN 14, Fact and Law Summary at Page 14). Defendant asserts substantial evidence supports the ALJ's decision that Plaintiff is not disabled (DN 14, Fact and Law Summary at Page 14).

At the fourth step in the sequential evaluation process, the Administrative Law Judge determines whether the claimant is able to return to her past relevant work in light of her current residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the vocational expert testified that the DOT assigned SVP levels of 5 and 7 to Plaintiff's past jobs of accounting clerk and office manager (Tr. 245). However, the vocational expert also testified that Plaintiff could perform both of these jobs despite two key limitations in the ALJ's hypothetical question, "the ability to understand and carry out simple routine tasks" and "should probably be in a low stress environment" (Tr. 246-247). Despite this apparent contradiction, the ALJ did not ask the vocational expert for an explanation (Tr. 247-250). Therefore, substantial evidence does not support the ALJ's finding at the fourth step that Plaintiff has the residual functional capacity to return to her past relevant work (Tr. 207-208). However, this error is harmless because at the fifth step substantial evidence supports the ALJ's finding that there exists a significant number of jobs in the national economy that Plaintiff can perform, given her residual functional capacity, age, education, and past work experience (Tr. 208-209). 20 C.F.R. §§404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g); <u>Allen v. Califano</u>, 613 F.2d 139, 145 (6th Cir. 1980); <u>Wyatt v. Secretary of Health and Human Services</u>, 974 F.2d 680, 684 (6th Cir. 1992); <u>Moon v. Sullivan</u>, 923 F.2d 1175, 1181 (6th Cir. 1990).

As previously mentioned, Plaintiff asserts the vocational expert's testimony about her being able to work three other jobs (information clerk, counter clerk, and office helper) does not constitute substantial evidence because it is based on a flawed residual functional capacity finding (DN 11, Fact and Law Summary at Page 9). The Court has already addressed and found no merit to the reasons why Plaintiff believes the residual functional capacity finding is flawed. In sum, the hypothetical question accurately portrays Plaintiff's physical and mental impairments. Therefore, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that Plaintiff is capable of performing a significant number of jobs existing in the national economy. Bradford v. Secretary, Dep't. of Health and Human Serv's., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam); Varley v. Secretary of Health and Human Serv's., 820 F.2d 777, 779 (6th Cir. 1987).

Finally, Plaintiff argues Finding No. 7 is not supported by substantial evidence because of the reasons she has stated above (DN 11, Fact and Law Summary at Page 9). Defendant argues there is no merit to this argument because the finding is supported by substantial evidence in the record (DN 14, Fact and Law Summary at Page 14).

In Finding No. 7, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, from May 16, 2008, through the date of the decision, October 20, 2011 (Tr. 209). The Court concludes this finding is supported by substantial evidence in the record for the reasons set forth above.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**. This is a final and appealable Order and there is no just cause for delay.

Copies:	Counsel